WILLIAM R. HAHN ET AL. *v.* ZONING COMMISSION OF THE TOWN OF VERNON

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued December 8, 1971—decided January 19, 1972

*Solomon Kerensky,* with whom was *Joseph P. Capossela,* for the appellants (plaintiffs).

*Abbot B. Schwebel,* for the appellee (defendant).

HOUSE, C. J.   The plaintiffs are the owners of a parcel of land situated on the southerly side of Regan Road in the town of Vernon.   The land is located in a R-22 zone, which is a residential zone limited to one- and two-family dwellings.   In 1967 the plaintiffs' application for a change of zone from R-22 to RMF, a residence multifamily zone, was denied by the defendant zoning commission.   In 1969, the plaintiffs again petitioned for the same change

of zone. Pursuant to § 8-3a of the General Statutes, the petition was forwarded to the planning commission of the town of Vernon, which recommended to the zoning commission that the application be denied. In its memorandum, the planning commission reiterated its prior opinion that the area in question has "reached a saturation point with regard to apartment development and that every effort should be made to eliminate the possibility of expansion of the apartment district east of the railroad track right-of-way as this right-of-way constitutes a physical buffer between the two district areas." In addition, the planning commission noted that granting the request would "[b]e in conflict with public convenience insofar as the encouragement of additional traffic . . . would significantly increase congestion in the streets." Subsequently, a public hearing on the application was held by the zoning commission. At the hearing the planning commission continued to oppose the application on the ground that granting it would increase traffic congestion and density on the highway, conflict with the comprehensive plan, concentrate population in the area and affect the predominantly single-family character of the area. One hundred and thirty-nine property owners in the area also registered opposition to the granting of the application.

Due to the absence of two regular members of the five-member zoning commission, two alternates sat as members of the commission for the hearing. Section 8-3a of the General Statutes provides, in part: "A proposal disapproved by the planning commission may be adopted by the zoning commission by a vote of not less than two-thirds of all the members of the zoning commission."

At the conclusion of the hearing, the commission

held an executive meeting but because of the lateness of the hour the five commissioners voted unanimously to table the matter and review the application "within the next sixty days" in accordance with the provisions of § 8-3 of the General Statutes. When the commission reconvened for the executive session on April 17, 1969, one of the alternates who sat on the commission for the public hearing was not present. The record contains no explanation for his absence. Three of the members of the commission voted in favor of approving the application and one voted against it, whereupon the commission informed the plaintiffs that in accordance with the provisions of §§ 8-3 and 8-3a of the General Statutes "requiring a two-thirds vote of all the members of the Zoning Commission, the application was . . . denied for failure to obtain the required number of affirmative votes to approve said application." The plaintiffs appealed this decision to the Court of Common Pleas and by agreement of the parties the court viewed the area and decided the issues on the record. From the dismissal of their appeal by the court the plaintiffs have appealed to this court.

In its memorandum of decision, the trial court aptly observed: "The conduct and procedure of this zoning commission tends to create public distrust and does not enhance public confidence in the proper enforcement of zoning regulations. Certainly, a petitioner is entitled to have all members of a commission present and voting on an application." Nevertheless, since one alternate member of the commission was absent and there was one negative vote and three affirmative votes the motion to approve the application failed to pass by "a vote of not less than two-thirds of all the members of the zoning commission" as the statute expressly requires.

In *Steiner, Inc.* v. *Town Plan & Zoning Commission,* 149 Conn. 74, 175 A.2d 559, we considered a similar problem which arose under § 8-3 of the General Statutes. In that case, a protest by the owners of 20 percent or more of the lots included in a proposed change of zone made it mandatory that no change be effected except by a vote of two-thirds of all the members of the zoning commission. In an opinion by *Baldwin, C. J.,* we said (pp. 77, 78) : "It [§ 8-3] manifests a legislative intent to give the additional protection afforded by the vote of two-thirds of a definite and constant number. To construe the statute as the plaintiff claims, that is, to require only two-thirds of the incumbents instead of two-thirds of the authorized membership, would mean, in the event of a vacancy, that a change could be made by a mere majority of the authorized membership of the commission or, if there was more than one vacancy, by even less, despite the protests of a qualified percentage of owners of adjacent property. . . . We hold that any action of the commission to amend, change or repeal zone regulations or zone boundaries requires, when a proper protest is filed under § 8-3, an affirmative two-thirds vote of the authorized membership of the commission." See also *Strain* v. *Mims,* 123 Conn. 275, 280, 193 A. 754. "[T]wo-thirds of all the members of the zoning commission" means just what it says and the statute cannot be construed to mean two-thirds of the members who are present and voting. This decision is in accord with the overwhelming weight of authority from other jurisdictions. See note, 43 A.L.R.2d 699, 709, and cases cited; 4 McQuillin, Municipal Corporations (3d Ed.), p. 493; 56 Am. Jur. 2d, Municipal Corporations, § 169.

We find no error in the conclusion of the trial court

that three affirmative votes were insufficient to constitute valid approval of the plaintiffs' application, and that on the record the plaintiffs failed to sustain the burden of proving that the zoning commission had acted illegally, arbitrarily and in abuse of its discretion. Zoning commissions have a wide discretion in determining the local public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problems and shape the solution. *Lupinacci* v. *Planning & Zoning Commission,* 153 Conn. 694, 699, 220 A.2d 274. "Courts cannot substitute their judgment for the wide and liberal discretion vested in the local zoning authority when it is acting within its prescribed legislative powers. *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160." Ibid. It is precisely this latter principle which in this instance restrains any other authority from assuming to exercise the prerogative granted by the legislature to the zoning commission and the legislature has plainly declared that in this instance the commission may only adopt the proposal on an affirmative vote of two-thirds of all its members. While a breakdown in the orderly and proper administration of zoning in the town of Vernon is evident in this case, the obvious remedy lies in the legislative and political rather than judicial sphere of government.

There is no error.

In this opinion the other judges concurred.